UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD COLBURN,

    Plaintiff,

v.

CITY OF TACOMA, operating the Tacoma Police Department; JOHN HILL; and JACOB WILLARD,

    Defendants.

CASE NO. C12-5211 BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants City of Tacoma ("City"), John Hill ("Hill"), and Jacob Willard's ("Willard") (collectively "Defendants") motion for summary judgment (Dkt. 13). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On February 10, 2012, Plaintiff Donald Colburn ("Colburn") filed a civil rights complaint in Pierce County Superior Court for the State of Washington alleging numerous causes of action and requesting damages resulting from officers Hill and

ORDER - 1

1  Willard's arrest of Colburn. Dkt. 1 at 5–10. On March 9, 2012, Defendants removed the
2  matter to this Court. Dkt. 1.
3       On February 27, 2013, Defendants filed a motion for summary judgment. Dkt. 13.
4  On April 2, 2013, Colburn responded. Dkt. 24. On April 12, 2013, Defendants replied.
5  Dkt. 27.

## II. FACTUAL BACKGROUND

7       On January 15, 2010, Colburn was out meeting friends and decided to drive home
8  afterwards. Dkt. 25, Declaration of Donald Colburn ("Colburn Dec.") at 1. It is
9  undisputed that Colburn was traveling at a high rate of speed, which caught the attention
10 of officers Hill and Willard. The officers accelerated to catch Colburn in an attempt to
11 initiate a traffic stop. Dkt. 15, Declaration of Jonathan Hill ("Hill Dec."), ¶ 4. Colburn
12 attempted to make a left hand turn, but, due to the high rate of speed, spun his car coming
13 to a stop in the parking strip of the street angled toward the curb. Colburn Dec. at 2. Hill
14 pulled his patrol car close to Colburn's vehicle and both officers approached the vehicle.
15 Hill Dec., ¶ 6.
16      The next sequence of events is disputed. Colburn declares that an officer
17 approached his vehicle and was "extremely angry, yelling, cursing and talking so rapidly
18 that [Colburn] could feel the spit coming from his mouth." Colburn Dec. at 2. Next,
19 Colburn states that

> [the officer] screamed to get out of the car and immediately grabbed
> [Colburn's] left arm and started pulling. The time from when he ran up to
> the car until he started pulling on my arm to drag me out of the car was
> almost instantaneous. I never had time to respond or even begin to get out

> of the car. It was happening so fast I don't recall whether he even opened the door. I know it had been locked as I came to a stop.

*Id.* On the other hand, Hill declares that:

> [He] opened the driver's door. Mr. Colburn was conscious, but appeared dazed. I ordered Mr. Colburn to exit the vehicle and at the same time, as I was giving him commands, I grabbed his left wrist with one hand and his arm just above the shoulder with the other in order to break his grip on the steering wheel. He did not respond to our commands to get out of the car, even after I was able to remove his left hand from the steering wheel.

Hill Dec., ¶ 6.

After the initial physical contact, the officers removed Colburn from the car and took him to the ground. Colburn's account of the removal and being handcuffed is as follows:

> [The officer] pulled hard on my arm, kind of levering it out and back towards the rear of the car. I recall him jerking on my arm very hard, three times. My arm was making contact with the pillar behind the door. I believe I was turning in my seat as he was doing this. I do not believe I had said anything to him yet. I know I did not resist or refuse to cooperate. In fact, he was saying nothing to me, just pulling on my arm. As he jerked on my arm the third time, something in my arm or shoulder popped and I was instantly in a great deal of pain. I must have blacked out for a moment after that because the next clear memory I have is of being on the ground face down. I was laying so my feet were towards the foot well of the car and my body was pointed away from the car. My arms were handcuffed behind my back. I do not recall whether I was pulled out through the window or the door, nor do I recall what happened while I was on the ground until I was handcuffed.

Colburn Dec., at 2–3.

Officer Hill provides a significantly different account of the removal and arrest. That account is as follows:

> I ordered Mr. Colburn to exit the vehicle and at the same time, as I was giving him commands, I grabbed his left wrist with one hand and his arm

ORDER - 3

    just above the shoulder with the other in order to break his grip on the steering wheel. He did not respond to our commands to get out of the car, even after I was able to remove his left hand from the steering wheel.

    Mr. Colburn still tightly gripped the steering wheel with his right hand. Officer Willard then reached into the vehicle to help me attempt to remove Mr. Colburn from the car. I removed Mr. Colburn's right hand from the steering wheel and we both pulled him out of the vehicle and onto the ground. Because this was a two-door sports car with a wide door opening, there was adequate space for both officers to fit in the doorway. To the best of my knowledge, there was no portion of the vehicle that Mr. Colburn could have struck when we removed him from the car.

    Once on the ground, Mr. Colburn continued to be actively resistant, by tucking both hands under his body. Several times, Officer Willard commanded Mr. Colburn to "stop resisting." Despite Officer Willard's commands, Mr. Colburn continued to keep his arms and hands tucked under his body, preventing us from safely handcuffing him. I could not see his hands and was concerned he might be attempting to reach for a possible weapon. Officer Willard was able to finally bring his left arm from under his body and secure it behind his back. Meanwhile, I was able to bring Mr. Colburn's right arm from underneath his body and around behind his back. At that point, we were finally able to securely handcuff Mr. Colburn.

Hill Dec., ¶¶ 6–8.

After Colburn was handcuffed, he was arrested, transported to the Tacoma Police Department, and then to St. Joseph's hospital for medical treatment. *Id*. ¶¶ 10–12, 14. The officers arrested Colburn for reckless driving, driving under the influence, and failure to transfer the title of his car to his name. *Id*. ¶¶ 9–11. At the hospital, Colburn was diagnosed with "a cracked rib, a spiral fracture of [his] left humerus and a greater tuberosity fracture in [his] shoulder." Colburn Dec., at 4.

### III. DISCUSSION

Defendants move for summary judgment on all of Colburn's claims. Dkt. 13 at 4. Colburn concedes that his separate claim for negligent training and supervision should be dismissed (Dkt. 24 at 24), but opposes the motion on all other grounds.

A.      **Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    42 U.S.C. § 1983**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

**1.    Excessive Force**

The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). In *Graham*, the Court reasoned that, in excessive force cases:

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir.1973)], violates the Fourth Amendment. The calculus of reasonableness

> must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving−about the amount of force that is necessary in a particular situation.

*Id*. at 396–97.  Relevant factors in determining whether the officer used an objectively reasonable amount of force include, but are not necessarily limited to, the crime's severity, whether the detained person posed an immediate threat to the officer's safety, and whether the subject was resisting arrest.  *See Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995) (citing *Graham*, 490 U.S. at 396).

In this case, viewing the facts in the light most favorable to Colburn, the Court finds that genuine issues of material fact preclude the entry of summary judgment.  First, it is undisputed that Colburn was being detained for a traffic offense, which could arguably not be considered a serious felony crime involving violence or bodily injury.  Therefore, as an initial matter, this factor weighs against the use of physical force involving bodily injury.

Second, Colburn may have been a threat to both the officers' safety and the public's safety.  It is undisputed that Colburn was traveling at a high rate of speed and spun his car out in a public street.  There are, however, differing accounts of whether Colburn was a threat when the officers approached his car.  Colburn contends that he placed the car in park and shut off the engine before the officers arrived.  Moreover, the car may have been pinned between the curb and Hill's squad car, which arguably could have impeded any attempt to flee.  On the other hand, both officers declare that the car

rolled forward as they approached on foot.  Therefore, questions of fact exist whether Colburn posed a safety risk.

Third, it is unclear whether Colburn was resisting arrest.  According to the officers, Colburn failed to respond to their numerous commands to exit the car and then physically resisted the officers' attempt to remove him from the car.  On the other hand, Colburn declares that the officers stormed his car and yanked him out of the car without warning or any opportunity to voluntarily exit the vehicle.[1]  Therefore, questions of fact exist whether Colburn resisted arrest.

While the Court is aware that these are important, but not the only factors to be considered, the Court is unable to determine the objective reasonableness of the force used without resolving these issues of fact.  Defendants argue that the Court can determine the objective reasonableness of the force used despite the differing versions of the arrest, but that argument is based on the false premise that "plaintiff concedes that the officers were within the scope of their authority in physically removing plaintiff from his vehicle . . . ." Dkt. 27 at 2.  The Court is unable to locate this concession.  In fact, Colburn states that he was given an order to exit his vehicle and then physically contacted by the officers without any opportunity to respond to their order.  Moreover, he claims that he didn't resist.  Under this version of the events, it would seem that little, if any, use of force was objectively reasonable.  On the other hand, if the officers' version of the

---

[1] In Coburn's deposition, he stated that the officers failed to give him an order to exit the vehicle or any warning that they were going to physically remove him from the vehicle. Dkt. 26-1 at 6–7 (pgs. 80–81 of the deposition).

events is found to be true at the bench trial, then it seems plausible that the force used was objectively reasonable. Clearly, however, there are material facts in dispute. Therefore, the Court denies Defendants' motion on the issue of whether the officers' use of force was excessive.

### 2. Qualified Immunity

Under the doctrine of qualified immunity, officers are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In this case, the Court has found that the officers may have violated Colburn's constitutional right and must determine whether that right was clearly established. However, the same questions of fact that preclude the entry of summary judgment on the issue of a constitutional violation preclude the entry of summary judgment on this issue as well. If the officers did not give Colburn an opportunity to exit the car and if Colburn was not resisting arrest, then his right to be free from the officers' use of force was clearly established. Therefore, the Court denies Defendants' motion on the issue of qualified immunity.

### 3. Municipal Liability

In order to assert a claim against the City under 42 U.S.C. § 1983, Colburn must show that "an official with final policy-making authority ratified a subordinate's

unconstitutional action or decision and the basis for it." *Hopper v. City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001). "[R]atification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

In this case, Colburn fails to submit evidence of ratification by an official policy maker. Colburn argues that the police sergeant, who responded to the scene after the arrest and conducted an investigation into the arrest, ratified the officers' use of force. Dkt. 24 at 21–23. First, it is undisputed that the sergeant had no knowledge of the constitutional violation, which was the alleged use of excessive force. The sergeant was informed of the circumstances of the arrest when he arrived at the scene, which was subsequent to any alleged violation. Therefore, the Court grants the City's motion on this issue.

Second, there is no evidence that the sergeant is an official policy maker. Colburn argues that, under certain case law, the sergeant may be considered a "defacto" policy maker because there is no further "automatic review" of his investigation. However, even in the case cited by Colburn, *J.B. v. Washington County*, 905 F. Supp. 979 (1995), the "defacto" decision maker acted before the constitutional violation occurred. Colburn has failed to provide any case law for the proposition that a subsequent, allegedly insufficient review based on the officers' version of the arrest is a ratification of an unconstitutional action. Therefore, the Court grants the City's motion for summary judgment on Colburn's municipal liability claim.

## C.  State Law

Colburn asserts state law claims for negligence and outrage.  With regard to negligence, Washington courts have consistently held that the duties owed by police are owed to the public at large and are unenforceable as to individual members of the public." *Chambers-Castanes v. King County*, 100 Wn.2d 275, 284 (1983).  "The relationship of police officer to citizen is too general to create an actionable duty." *Torres v. City of Anacortes*, 97 Wn. App. 64, 74 (1999), *rev. denied*, 140 Wn.2d 1007 (2000).  Defendants argue that the Court should grant summary judgment on Colburn's negligence claim because he has failed to establish any duty the officers owed Colburn.  Dkt. 13 at 15–17.  The Court agrees.  Therefore, the Court grants Defendants' motion for summary judgment on Colburn's negligence claim.

With regard to Colburn's claim for outrage, Colburn must prove the basic elements of the tort of outrage: (1) extreme and outrageous conduct; (2) the intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Keates v. Vancouver*, 73 Wn. App. 257, 263 (1994).  In determining whether conduct is outrageous, it is not enough that the defendants' intent was tortious, criminal, intended to inflict emotional distress or characterized by malice or a degree of aggravation that would entitle a plaintiff to damages for another tort. *Birklid v. Boeing Co.*, 127 Wn.2d 853, 868 (1995).  Liability will only be imposed where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.  Also, "the degree of emotional distress caused by a party must be

1 | severe as opposed to constituting mere annoyance, inconvenience or the embarrassment
2 | which normally occur in a confrontation of the parties . . . ." *Id*. at 867.  Finally, the
3 | plaintiff must show that the defendant engaged in the extreme and outrageous conduct
4 | intending to cause emotional distress to the plaintiff.  *Id*. at 868.
5 | In this case, Defendants argue that the officers' conduct is insufficient to support a
6 | claim for outrage.  Dkt. 13 at 21.  Defendants also argue that Colburn has failed to submit
7 | sufficient admissible evidence in support of his claim.  Dkt. 27 at 12–13.  The Court
8 | agrees with both arguments.  Even if the officers physically contacted Colburn
9 | prematurely and Colburn did not resist, the action is not atrocious or utterly intolerable in
10 | a civilized society.  Moreover, there is no evidence that the officers acted with intent to
11 | cause severe emotional distress.  Therefore, the Court grants Defendants' motion on
12 | Colburn's claim for outrage.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment (Dkt. 13) is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 7th day of May, 2011.

BENJAMIN H. SETTLE
United States District Judge